NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RALPH JOHN CHAPA,
*Plaintiff/Appellant*,

*v.*

MATTHEW B. BARKER.
*Defendant/Appellee*,

No. 1 CA-CV 13-0052

FILED 1-8-2015

Appeal from the Superior Court in Maricopa County
No.  CV2011-019767
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED**

COUNSEL

Law Office of William D. Trusler, Chandler
By William D. Trusler
*Counsel for Plaintiff/Appellant*

Maricopa County Attorney's Office, Phoenix
By Joseph I. Vigil
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

¶1   Ralph John Chapa appeals from the trial court's dismissal of his complaint for failure to state a claim. We affirm for the following reasons.

## FACTS AND PROCEDURAL BACKGROUND

¶2   While in the custody of the Maricopa County Sheriff's Office (MCSO), Chapa filed a pro per complaint that seemingly alleged prisoner abuse against the MCSO for issues Chapa claimed were related to his "severe bilateral carpal tunnel syndrome." Despite finding that Chapa had not clearly stated a claim for relief, the trial court gave Chapa thirty days to file an amended complaint. Chapa soon after requested a time extension, and also filed an "Emergency Motion" requesting counsel be appointed to assist him with filing an amended complaint. The trial court granted the extension but declined to appoint counsel on Chapa's behalf.

¶3   After a second extension was requested and granted, Chapa filed an amended complaint. The amended complaint stated that Chapa suffers from "severe chronic neurological disorder" and "bilateral severe carpal tunnel syndrome." Chapa alleged that he "was forced to suffer severe chronic pain unnecessarily" because defendant Matthew B. Barker, a physician's assistant employed by Maricopa County, "[denied] Mr. Chapa medical wrist braces ordered by a state licensed neurologist." The complaint sought damages because Barker's alleged refusal to provide wrist braces caused, according to Chapa, "further nerve damage and daily pain" and was "a gross malpractice of medicine."

¶4   The trial court dismissed Chapa's amended complaint under Arizona Rule of Civil Procedure (Rule) 12(b)(6). Chapa timely appealed, and he moved this court for appointment of counsel, this time citing his mental illness as "extraordinary cause." This court stayed the appeal and revested jurisdiction in the trial court to allow Chapa to file a Rule 17(g) motion asking for the appointment of a guardian ad litem (GAL).

Accordingly, Chapa filed the Rule 17(g) motion and the trial court appointed a GAL to investigate "whether [Chapa] is in need of guardianship or conservatorship[.]" A permanent conservator was ultimately appointed for Chapa, and the conservator now pursues this appeal on Chapa's behalf. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1 and -2101.A.1 (West 2014).[1]

## DISCUSSION

I.      Dismissal of the Amended Complaint Under Rule 12(b)(6)

**¶5**          Chapa argues the trial court erred by dismissing the amended complaint under Rule 12(b)(6) because he "pled sufficient facts" to state a medical malpractice claim.[2] We review de novo a complaint's dismissal under Rule 12(b)(6). *Coleman v. City of Mesa*, 230 Ariz. 352, 355-56, ¶ 7, 284 P.3d 863, 866-67 (2012). Arizona follows a "notice pleading standard," requiring that a pleading provide an opposing party "fair notice of the nature and basis of the claim and indicate generally the type of litigation involved." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 6, 189 P.3d 344, 346 (2008) (internal quotation marks and citations omitted). Complaints stating only legal conclusions without any supporting factual allegations do not meet Arizona's notice pleading standard. *Id.* at ¶ 7. If supporting factual allegations are present, however, we assume them as true, and dismissal is appropriate only if "plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Fid. Sec. Life Ins. Co. v. State Dept. of Ins.*, 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998).

---

[1]      We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

[2]      As reflected in the minute entry dismissing Chapa's complaint and the responsive briefing to this court, both the trial court and the Appellee have stated that Chapa's amended complaint also alleged cruel and unusual punishment. However, Chapa has not argued that the amended complaint included a cruel and unusual punishment claim or that such a claim was well pled. If any such claim existed, Chapa has waived the claim by abandoning it. *See Vortex Corp. v. Denkewicz*, 235 Ariz. 551, 556, ¶ 16, 334 P.3d 734, 739 (App. 2014) (declining to address an issue abandoned on appeal).

**¶6**         Medical malpractice is a type of negligence claim established by statute in Arizona.  *See* A.R.S. §§ 12-561.2 (defining the cause of action) and -563 (listing the required elements).  The Arizona Supreme Court has previously interpreted these statutes, noting that "[i]n medical malpractice actions, as in all negligence actions, the plaintiff must prove the existence of a duty, a breach of that duty, causation, and damages." *Seisinger v. Siebel*, 220 Ariz. 85, 94, ¶ 32, 203 P.3d 483, 492 (2009).  Chapa argues that he pled sufficient facts to meet both Arizona's notice pleading standard and the elements of a medical malpractice claim.

**¶7**         Although Chapa's amended complaint provides sufficient notice of a medical malpractice claim, it does not contain sufficient facts to support a conclusion that Barker committed medical malpractice.  Chapa notes, for example, that he was first diagnosed with "severe carpal tunnel syndrome" in 2009 and that his physician accordingly "recommended" he wear wrist braces.  However, Chapa later asserts that he was denied wrist braces "ordered by a state licensed neurologist," before again stating that his diagnosis "recommended" wrist braces.  The difference between a "recommended" treatment and an "ordered" treatment is significant because Chapa does not specify whether the braces were required or merely suggested.  Furthermore, the amended complaint never states why wrist braces are medically necessary.  The absence of such facts and the inconsistencies within the facts alleged make it impossible to determine the relevant scope of Barker's duty "to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider" or how Barker may have breached that duty.  *See* A.R.S. § 12-563.1.

**¶8**         Finally, because the amended complaint did not explain the medical necessity of the wrist braces, insufficient facts exist to determine whether Barker's refusal to provide wrist braces proximately caused the pain and suffering allegedly occurring under Barker's care.  *See* A.R.S. § 12-563.2.  The record before us indicates that Chapa was an inmate in the county jail on multiple occasions, and from the facts presented, it is impossible to tell whether Chapa's alleged pain and suffering occurred as a result of one of those stays, or whether his condition worsened after he was released but before he returned.  Whether Barker committed medical malpractice by not giving Chapa wrist braces only because the wrist braces were previously "ordered" or "recommended" is merely a conclusion that fails to factually link the denial of Chapa's requested treatment with the pain and suffering he allegedly endured during the relevant time period.  Accordingly, the trial court did not err in dismissing the amended complaint under Rule 12(b)(6).

II.    Denial of Chapa's Request for Appointment of Counsel

¶9        Chapa contends the trial court erred by denying his request for appointed counsel, and that because a conservator was eventually appointed on his behalf, the trial court likewise erred by dismissing the amended complaint before the conservator could "investigate [Chapa's] need for and right to assistance."   An indigent person's right to counsel exists only in particular legal contexts. *See Lassiter v. Dep't of Soc. Servs. of Durham Cnty., North Carolina*, 452 U.S. 18, 25 (1981) (stating that the right to counsel generally "exist[s] only where the litigant may lose his physical liberty if he loses the litigation"); *Zarabia v. Bradshaw*, 185 Ariz. 1, 4, 912 P.2d 5, 8 (1996) (noting that an indigent person's right to counsel is required in the criminal justice system when liberty interests are at stake); *Denise H. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 257, 259, ¶ 6, 972 P.2d 241, 243 (App. 1998) (commenting on an indigent parent's right of counsel when facing severance of parental rights).

¶10       Although Chapa has a right to avail himself of the courts in bringing a well-pled claim for medical malpractice, adjudicating Chapa's claim, regardless of the outcome, would not impact Chapa's physical liberty.  Thus, he is not entitled to counsel at the taxpayers' expense, and the trial court did not err in denying the request for appointed counsel.

¶11       Because Chapa had no right to counsel in this matter, the trial court was not under any duty to ensure a GAL or conservator was appointed before dismissing the amended complaint.  Chapa asserts that A.R.S. § 14-5401.A.2.(a) afforded him the right to have the ultimately-appointed conservator prosecute claims on his behalf, and he likewise claims that an order in an unrelated criminal matter finding him incompetent for trial shows that a GAL or conservator was needed before the amended complaint's dismissal.  We note, however, that this incompetency determination was made well after the amended complaint's dismissal, and the judge in Chapa's conservatorship proceeding found that Chapa's inability to manage his affairs was due to confinement and that Chapa "remains competent to prosecute his cases on his own behalf."[3]  Chapa's reliance on A.R.S. § 14-5401.A.2(a) is also to no avail because the statute establishes only that "[a]ppointment of a conservator . . . *may* be made" under certain circumstances. (Emphasis added.)  Because the trial

---

[3]     We take judicial notice of these findings from other proceedings. *See Regan v. First Nat'l. Bank*, 55 Ariz. 320, 327, 101 P.2d 214, 217 (1940) ("courts [may] take judicial notice of other actions involving similar parties and issues[.]")

court was in the best position to assess Chapa's ability to proceed, *see MacMillan v. Schwartz*, 226 Ariz. 584, 592, ¶ 38, 250 P.3d 1213, 1221 (App. 2011) ("the trial court is in the best position to observe and assess the conduct of the parties before it"), we conclude the trial court did not err by dismissing Chapa's amended complaint before appointing a GAL.

## CONCLUSION

¶**12**  We affirm the dismissal of Chapa's amended complaint.



Ruth A. Willingham · Clerk of the Court
FILED: ama