# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2836

_____

United States of America,                    *
                                             *
      Plaintiff/Appellee,          *
                                             * Appeal from the United States
  v.                                         * District Court for the
                                             * Eastern District of Arkansas.
Craig L. Watson,                             *
                                             *
      Defendant/Appellant.         *

_____

Submitted: December 12, 2006
Filed: February 22, 2007

_____

Before LOKEN, Chief Judge, MURPHY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

A jury convicted Craig L. Watson of four counts related to the distribution of cocaine base in violation of 21 U.S.C. §§ 841 and 846, and the district court[1] sentenced him to 276 months imprisonment. Watson appeals from the judgment, arguing that the district court should have granted his second motion for a new trial based on the fact that his trial attorney had been suspended from practice by the State of Arkansas during his representation of Watson. We affirm.

_____

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

Watson and a codefendant were indicted in May 2004 on six counts of drug related offenses, and a superceding indictment was returned in October 2004 adding an additional defendant. In January 2005 the other defendants pled guilty, and the government moved to dismiss the indictment. A new indictment issued on March 1, 2005, charging Watson with conspiracy to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 846, distribution of seven grams of cocaine base, attempt to distribute more than five grams of cocaine base, and possession with intent to distribute more than 50 grams of cocaine base, all in violation of § 841.

The case proceeded to trial in August 2005, and the jury returned guilty verdicts on all counts. Shortly thereafter Watson moved for a new trial, alleging juror misconduct. The motion was denied. After retaining new counsel, Watson filed a second motion for new trial in June 2006. In support of this motion Watson argued that his Sixth Amendment rights had been violated by his unknowing representation by an attorney whose state license had been suspended. After a hearing the district court denied the motion and sentenced Watson to 276 months.

From the time of Watson's initial arraignment in May 2004 until after his trial, Watson was represented by retained counsel R.S. McCullough. In February 2005, McCullough was suspended from the practice of law by state authorities while they investigated a complaint unrelated to Watson's case. McCullough's federal practice status was not immediately affected although proceedings were initiated to consider his suspension, and his right to practice in the federal district courts in Arkansas was suspended on January 1, 2006, pending the outcome of the state disciplinary action. His federal suspension thus came well after the conclusion of Watson's trial in August 2005, and McCullough represented Watson throughout trial and on his first post trial motion.

The United States filed two separate pretrial motions in Watson's case, on March 28 and April 4, 2005, alerting the district court to McCullough's state suspension and asking the court to set a hearing to determine whether new counsel should be appointed for Watson. The district court ordered Watson to notify the court how he wished to proceed. McCullough filed a response on April 14, 2005 stating that the defendant wished to continue with his representation notwithstanding the state suspension. The document purported to bear Watson's signature. On the basis of this response and the fact that McCullough had not been suspended in federal court, the district court denied the government's motion for appointment of new counsel.

Watson's second motion for a new trial was brought by new counsel who argued that representation by a suspended attorney had violated Watson's Sixth Amendment right to counsel. In support of the motion Watson submitted an affidavit stating that he had been unaware of McCullough's licensing problems at the time of his trial and that he would have sought another lawyer had he known about them. The district court scheduled a hearing for the motion and sentencing. Watson testified at the hearing that he had never been made aware of McCullough's state suspension, that he had not signed the response submitted in opposition to the government's motion for appointment of new defense counsel, and that the signature on that document had been forged. The court also heard testimony from Rodney Seals, Watson's probation officer, who stated that he had informed Watson in April 2005 that McCullough was undergoing licensing problems and had advised him to seek new counsel. Seals also testified that Watson had told him at that time that he had already discussed the issue with McCullough. Watson denied having had such a conversation with Seals.

The district court credited Seals testimony and found that Watson had been aware of his lawyer's licensing difficulties. It also noted that the signature on Watson's responsive pleading was "very similar" to Watson's signature on his affidavit submitted in support of the second motion for new trial. The court found that

McCullough had represented Watson competently, even though he had not always been easy to reach, and it denied the motion for new trial. The court then proceeded to address sentencing issues, imposing a sentence of 276 months.

On appeal Watson challenges only the denial of his second motion for new trial, arguing that McCullough's representation constituted a per se violation of his Sixth Amendment right to effective assistance of counsel, that the district court erred in rejecting his testimony that his signature had been forged, and that he should have been present at an April 2005 hearing about McCullough's right to practice in federal court.

We will reverse the denial of a motion for a new trial only if the district court abused its discretion and the evidence indicates that a "miscarriage of justice may have occurred." United States v. Lewis, 436 F.3d 939, 945 (8th Cir. 2006). Watson argues not only that the district court erred in not finding a Sixth Amendment violation, but also that manifest injustice would result if his conviction were allowed to stand despite his trial counsel's involvement in disciplinary proceedings. Watson argues that his claim differs from the ordinary Strickland claim which requires a showing that counsel's representation "fell below an objective standard of reasonableness" and prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Although Watson does allege that his trial counsel's representation was deficient, he contends that prejudice need not be shown to make out a Sixth Amendment violation in this case. Relying on Solina v. United States, 709 F.2d 160 (2d Cir. 1983), he argues that McCullough's representation amounts to a per se constitutional violation.

In Solina, the Second Circuit vacated a defendant's conviction despite overwhelming evidence of guilt because he had been represented at trial by an individual who had never been admitted to the practice of law. Id. at 168-69. Watson urges us to adopt a similar per se rule in his case. The circumstances here are very

-4-

different from those in <u>Solina</u>, however. There is a significant distinction between representation of a criminal defendant by an individual never authorized to practice law who had repeatedly failed to pass an attorney licensing exam as in <u>Solina</u> and representation by a competent experienced attorney, albeit one facing disciplinary proceedings. Furthermore, the Second Circuit demonstrated in a subsequent case that it had not adopted a broad rule of general application in <u>Solina</u>. <u>See</u> <u>Bellamy v. Cogdell</u>, 974 F.2d 302, 306-07 (2d Cir. 1992). The court found no per se Sixth Amendment violation in <u>Bellamy</u> where trial counsel had had serious health problems leading to suspension of his license after defendant's trial. The Second Circuit clarified that a per se violation would occur only in circumstances where a defendant was unaware that his counsel had not been licensed at the time of trial due to a failure to meet the substantive requirements to practice law or unaware that counsel was implicated in defendant's crimes. <u>Id.</u> at 306. Watson's case falls into neither of those narrow categories.

In our circuit we have declined to extend a per se ineffective assistance of counsel rule to cases where the defendant was represented by a trained and qualified attorney, albeit one with licensing problems. <u>See</u> <u>Derringer v. United States</u>, 441 F.2d 1140, 1141 (8th Cir. 1971) (counsel eligible for bar membership but failed to register or take oath); <u>United States v. Rosnow</u>, 981 F.2d 970, 972 (8th Cir. 1992) (unlicenced counsel jointly representing defendant); <u>United States v. Rimell</u>, 21 F.3d 281, 286 (8th Cir. 1994) (cross examination by nonattorney with attorney present); <u>Johnson v. Norris</u>, 207 F.3d 515, 518 (8th Cir. 2000) (counsel suffering from mental illness). We similarly decline to apply a per se rule here.

McCullough was authorized to practice in federal court at the time of Watson's trial; it was not until several months later that his federal license was suspended. Watson contends that McCullough's right to practice in federal court was derived from his state license and that his state suspension therefore had legal consequences for his

federal practice authority. This argument overlooks the procedures for controlling the right to practice in the federal court hearing Watson's case. See Model Federal Rules of Disciplinary Enforcement, Rule II(D) (ABA 1991) (attorney subject to state discipline has opportunity to show cause why identical measures should not be imposed by the federal courts); In re Bird, 353 F.3d 636, 638 (8th Cir. 2003) (district court which has adopted the Federal Rules must afford their procedural protections).

A per se ineffective assistance of counsel rule would be appropriate only in situations where the probability of prejudice would be so high that it could be presumed to have occurred. See Caban v. United States, 281 F.3d 778, 782-83 (8th Cir. 2002). There is nothing inherent about the suspension of a state license that would necessarily interfere with a trained attorney's ability to represent a client in federal court. McCullough had every incentive to mount a vigorous defense on Watson's behalf, and the district court found that he had done so. Watson would have to show prejudice in order to make out his Sixth Amendment claim, and it would more appropriately be raised in a collateral proceeding under 28 U.S.C. § 2255. See United States v. Ramirez-Hernandez, 449 F.3d 824, 826-27 (8th Cir. 2006).

Watson also argues that the district court erred in finding that he had elected to retain his counsel after learning about McCullough's disciplinary trouble, again contending that his signature had been forged on the document submitted by counsel. The district court based its finding about Watson's choice to keep McCullough in large part on its assessment of the credibility of the witnesses at the hearing, finding that probation officer Seals was more credible than Watson. "[C]redibility is a determination for the trier-of-fact, and its assessment is virtually unassailable on appeal." United States v. Rodriguez, 414 F.3d 837, 845 (8th Cir. 2005). The district court's observation that the challenged signature was very similar to Watson's signature on his affidavit submitted with the motion, cf. Greater Kansas City Laborers Pension Fund v. Thummel, 738 F.2d 926, 928-29 (8th Cir. 1984) (trier of fact may

draw conclusions based on comparison of handwriting samples without expert testimony), was also of relevance in light of the court's credibility findings. When the evidence is taken as a whole, we cannot say that the district court erred in rejecting Watson's assertions that his signature had been forged and that he had known nothing about McCullough's suspension.

Watson also argues that his conviction was obtained in violation of Federal Rule of Criminal Procedure 43(a) because he was not present at the April 2005 hearing on McCullough's federal practice status. A criminal defendant clearly has the right to be present at every stage of his own trial, see Illinois v. Allen, 397 U.S. 337, 338 (1970), a right that is codified by Rule 43(a). Watson argues that he should have been present at McCullough's hearing to discuss any concerns of his own and to authenticate his signature on the document submitted by McCullough. Watson miscasts the character of that hearing by his description of it as one "to determine if Attorney McCullough should continue as Watson's attorney," for the scope of the hearing dealt with McCullough's rights, not Watson's. Our review of the hearing transcript shows only a tangential mention of Watson's case completely unrelated to substantive issues. The hearing on McCullough's practice status cannot be considered part of Watson's trial within the meaning of Rule 43(a), and the district court did not abuse its discretion in denying a new trial on this ground.

Since the district court did not abuse its discretion or commit an error of law in denying Watson's second motion for new trial, we affirm the judgment.

_____